EDGELL *against* HART.

Where the purchaser of a stock of goods in a retail store executed to the vendor a mortgage upon the entire stock, by schedule, the mortgage including also in its terms all articles of a like nature which might be in the store at the time of default in the condition, the mortgagor to continue in possession, but being forbidden by a clause in the mortgage from selling *on credit*, it was *Held*, that the mortgage was in its terms fraudulent as against creditors, and that there was no question to be submitted to a jury with regard to it.

THIS was an action commenced in October, 1849, for detaining personal property, and would have been replevin under the former practice. The property was a quantity of groceries, the assortment of a retail store. The defendant in the answer justified as sheriff of the county of Monroe, under two executions issued out of the supreme court, and delivered to the defendant as sheriff to be executed, on the 4th day of October, 1849, against one Lyman Bostwick; under which the defendant says he took the property and detained it until it was taken from his possession by the proceedings in the action. The answer also states that the

goods were the property of Bostwick, and at the time of the levy were in his possession, and a part of his stock in trade as a retail grocer in Rochester; that Bostwick was, and for a year past had been engaged in selling the stock of which they formed a part, for his own use. The reply denies that the goods were Bostwick's property, and sets out a chattel mortgage under which the plaintiff claims them.

On the trial at the Monroe circuit in June, 1852, before PRATT, J., the plaintiff gave in evidence a chattel mortgage, executed to him by Bostwick on the 14th day of August, 1849. By it Bostwick mortgaged to the plaintiff the goods and property mentioned in a schedule annexed, and which were in a certain store in Rochester; with a condition to be void if Bostwick should pay the plaintiff $1000, by instalments of $100 per month, the first instalment to be paid in twelve months from the giving of the mortgage. Until default Bostwick was to continue in quiet possession and enjoyment of the property, unless he should attempt to sell it, in which case the plaintiff might take and keep it until default and then sell it.

The annexed schedule was a list of items of groceries and store furniture, at the foot of which was the following, the whole paper being signed by Bostwick: "Together with all other articles mentioned and specified in a bill of sale this day executed by the said party of the second part to the said party of the first part, and *to include also all other articles of a like nature which may be put, or be in said store, whenever the said party of the second part may be entitled to enforce the within mortgage. Said party of the first part not to sell any of the said goods upon credit. If any of the said goods are sold upon credit, that shall be sufficient cause of forfeiture of the within mortgage, and entitle the said Edgell to treat the same accordingly, at his election.*" The mortgage had been duly filed.

Edgell *against* Hart.

The plaintiff proved that in August, 1848, he sold Bostwick a stock of groceries, with which he, the plaintiff, had been trading as a grocer, for $2200, and took his notes payable $100 per month, and a chattel mortgage. Bostwick had paid eleven or twelve of the notes, and in August, 1849, gave the new mortgage, the schedule which had been attached to the first mortgage being taken off and with a few items added annexed to the new one. In the meantime, and until the seizure, he had been selling the goods as a retail merchant, and making fresh purchases. He purchased about $800 worth in the fall of 1848, and about an equal amount in the spring of 1849. The new purchases, being of similar goods, answered the description in the former schedule. He had sold to the amount of $1000 or $1500. The purchase in the fall of 1848, was made of a firm in New-York, who are the same persons with the plaintiffs in one of the executions under which the levy was made. A part of the goods seized belonged to the old stock, and the rest were of the new purchases. Bostwick supplied his family with necessaries from the store, and gave due bills payable in goods for clothing, &c., which were paid out of the store. The plaintiff after selling out to Bostwick went into business again in the same street in which Bostwick's store was. Bostwick went away to California about a week before the sheriff closed his store. After the seizure the plaintiff demanded the property of the sheriff.

The defendant moved for a nonsuit on the ground that the chattel mortgage under which the plaintiff claimed was fraudulent and void as against creditors. The judge nonsuited the plaintiff, who excepted. Judgment for the defendant, which was affirmed at a general term. (13 *Barb.*, 380.) The cause was submitted here upon printed arguments by

*E. Darwin Smith* for the appellant.

*J. L. Angle* for the respondent.

DENIO, J.  The schedule annexed to the mortgage and referred to in it, was a part of that instrument; and both papers are to be construed together. (*Roberts* v. *The Chenango Mut. Ins. Co.*, 3 *Hill*, 501; *Hills* v. *Miller*, 3 *Paige*, 254, 256, *and cases cited; Cow. & Hill's Notes*, 1420, *note* 958.)

The inhibition to sell on credit contained in the writing at the foot of the schedule, by a necessary implication authorized Bostwick to sell the goods for cash, and all the circumstances connected with the transaction, as well as the admission in the pleadings, show that the intention of the instrument was that Bostwick should continue to retail the mortgaged property and receive the proceeds to his own use, as he had done with the plaintiff's knowledge and assent from the time of the original purchase, and the giving of the first mortgage.

Interpreting the instrument in this manner, the scope of the written arrangement between the parties was that Bostwick should carry on a retail store, making purchases from time to time and selling off in the ordinary manner, the plaintiff all the time retaining a lien on the whole stock by way of mortgage; under which he could upon a default take possession of the remaining goods, whether they were those owned by Bostwick at the giving of the mortgage or purchased subsequently, and sell them for the payment of his debt. I have said that this was the *written arrangement* between the parties, and not merely their supposed intention deduced from circumstantial proof. They made this precise bargain in writing, and the question is whether by law such an arrangement is void as against creditors. The appellant's counsel strenuously contends that inasmuch as the statute has declared that the question of fraudulent intent shall be deemed a question of fact and not of law (2 *R. S.* 137, § 4), the effect of the mortgage should have been left to the jury. It should be remembered that there is no question respecting the meaning of the language. The doubt, if

Edgell *against* Hart.

there be one, is whether the law tolerates such an arrange-ment where the rights of creditors are concerned. There was no traversable question either respecting the intention of the parties. The law adjudges that they intended what the writing expresses; and it would be incompetent for either party to show, if they were possessed of the most persuasive evidence, that they designed the instrument to have a different operation from the one the law assigns to it. As it is the duty of the court to respond as to the law, and as this was a pure question of law, it belonged to the judge at the circuit to determine whether an action could be sustained on this mortgage. If by law it was void as to creditors, the court would be obliged to set aside a verdict affirming its validity as often as one should be rendered. The true ques-tion then is whether a person engaged in traffic and indebted can make a valid contract or conveyance in favor of one creditor, by which he shall possess a lien upon all the chattels which the debtor shall from time to time have on hand, allowing the latter to sell and purchase like an unqualified owner, the lien attaching only to what may be on hand at the time it is sought to be enforced. The proposition requires only to be stated to be refuted. The branch of it which professes to subject after-purchased property is void upon the most common principles. A mortgage is an executed conveyance subject to a condition, and has all the elements of a sale. Like a sale, it requires a subject *in esse* and in the power of the mortgagor. (2 *Bouvier's Law Dic.*, 485, *pl.* 1, 2, 3, 6; *Blackburne on Sales*, 122; *Rapelye* v. *Mackie*, 6 *Cow.*, 250; *Outwater* v. *Dodge*, 7 *Cow.*, 85.) The appel-lant's counsel concedes that the instrument was inoperative upon after-acquired property; but he argues that this con-sideration does not affect it in respect to that which was on hand when it was executed. But it seems to me that its prospective operation was an essential part of the entire arrangement. It was not intended to create an absolute lien upon any property, but a fluctuating one which should open

to release that which should be sold, and to take in what should be newly purchased. It may be safely assumed that the liberty to sell would not have been given, but for the right supposed to be acquired over subsequent purchases. But I am of opinion that the right to sell, if it stood alone, would vitiate the mortgage. In *Griswold* v. *Sheldon* (4 *Comst.*, 581, 594), five judges of this court concurred in holding that such a provision would render the instrument void, and four were of opinion that where 'the mortgagor was allowed by the mortgagee to sell the mortgaged chattels, though not in pursuance of a provision in the instrument, the mortgage would be invalid in law, whatever a jury might think of it. The invalidity of such a transaction had been affirmed in the supreme court in *Wood* v. *Lowry* (17 *Wend.*, 492), and no case or *dictum* has been found to uphold it. I not only agree that the case of *Smith* v. *Acker* (23 *Wend.*, 658) is an authoritative exposition of the statute respecting fraudulent sales, but I assent to it *ex animo* as asserting the true sense of the legislature. The effect of that decision I understand to be that where the objection to a sale or mortgage of chattels is that the vendor or mortgagor continues in possession, the transfer, though *prima facie* fraudulent, is susceptible of explanation by proof that it was intrinsically honest and made without a view to defraud creditors. This explanation relates to the consideration and motives of the transfer, and is not limited to accounting for the want of change of possession; and it is moreover to be submitted to a jury in all cases where it arises upon the trial of an issue of fact. But this falls far short of proving that no transfer of chattels can be fraudulent and void *in law* as against creditors, and still farther from showing that a jury is in such cases to take the place of the court in determining the effect of written instruments. A deed of gift by a person indebted would, I presume, be void as against creditors as a matter of law, as well since as before the statute; and so also of a conveyance of chattels which like the mortgage should leave the owner

the right of selling them as his own. These considerations are sufficient to enable us to decide the case in favor of the respondent; and it is unnecessary to determine whether a nonsuit would be proper, if the right of the mortgagor to sell had been made out by the conduct of the parties or their declarations out of the mortgage. My own opinion is that the existence of such a provision out of the mortgage or in it would invalidate it as matter of law, and that where the facts are undisputed this court should so declare. The manifest tendency of such arrangements to defraud creditors by giving to the mortgagor a false credit, and their incongruity with the just and legal idea of a mortgage are in my mind sufficient to condemn them; but as before remarked it is only necessary now to decide that in this case the objectionable provision being contained in the mortgage the nonsuit was proper.

The judgment of the court below should be affirmed.

Judges GARDINER, MASON and JOHNSON dissented.

Judgment affirmed.