THE FARMERS' LOAN AND TRUST COMPANY, AS TRUSTEES, RESPONDENT, *v.* THE LONG BEACH IMPROVEMENT COMPANY, HENRY HILTON, WILLIAM LIBBEY AND OTHERS, APPELLANTS.

*Mortgage upon after-acquired property — when invalid as against subsequent creditors of the mortgagor.*

A corporation, in order to secure the payment of certain bonds issued by it, executed and delivered two mortgages, conveying all its property, both real and personal, then owned or thereafter to be acquired by it, together with all its furniture, carpets, beds, etc. After the execution and delivery of the mortgages, it bought articles for and used them in furnishing a hotel kept by it. Having failed to pay for such articles, a judgment was recovered against it for the purchase-price thereof, and under an execution issued upon the said judgment, a levy was made upon the said articles, and upon other furniture purchased by it after the execution and delivery of the mortgages. Thereafter the plaintiff brought this action to foreclose the mortgages.

*Held,* that the plaintiff acquired no interest in or lien upon the said articles by virtue of the mortgages, which would authorize a court of equity to restrain the judgment creditor from selling the property so levied upon, and applying the proceeds to the payment of the judgment.

Appeal from an order made at a Special Term, restraining the defendant Wright, as sheriff, and certain of the other defendants, from selling or interfering with certain articles of personal property, which had been seized under an execution issued against the defendant corporation. The action was brought to foreclose two mortgages given by it, one dated May 1, 1880, the other February 19, 1881. The first granted "all of the corporate property of said party of the first part, both real and personal, now owned or hereafter to be acquired, including," etc. ; a specific parcel of real estate was also described. The description of the property granted in the second mortgage was the same, except that there was added, after the description of the real estate, "also all its furniture, carpets, beds, bedding, fixtures, utensils, tools, machinery, coal, wood, supplies of every kind belonging to or appertaining to the party of the first part."

*Henry H. Rice* and *Winchester Britton,* for the appellants Hilton and Libbey.

*Herbert B. Turner,* for the respondent.

Dykman, J. :

The Long Beach Improvement Company executed to the plaintiff two mortgages dated May 1, 1880, and February 19, 1881, to secure the payment of bonds of the company. The first mortgage granted all the corporate property then owned or thereafter to be acquired by this corporation, real and personal, and the second did substantially the same thing.

After the execution and delivery of both mortgages the defendants Hilton and Libbey sold and delivered to the improvement company on credit a large quantity of articles for furnishing the hotel, and in August, 1881, they recovered a judgment against the company for $17,331 for the property so sold. On this judgment an execution against the property of the company was issued and delivered to the defendant Wright, the sheriff of Queens county.

Under this execution he levied on all the property so purchased of the plaintiffs in the execution and some furniture purchased from another house, all of which was acquired after the execution of the last mortgage.

While the property was under the levy this action was commenced for the foreclosure of the two mortgages, and on the petition of the plaintiff an order made at the Special Term restraining the sale of the property seized and requiring the sheriff to deliver the same to the receivers who have been appointed. From that order we have this appeal. Either this order must be sustained on the theory that the mortgages created a lien on the after-acquired property, paramount to the lien and right under the execution and the levy, or it must fall.

It may be stated, first, that the property in question has no annexation to realty to deprive it of the character of personal property, and it cannot therefore pass under the mortgages as incidental to the land.

A mortgage has all the elements of an executed conditional sale, and like a sale requires a subject in existence and in the ownership and control of the mortgagor. A mortgage can have no validity where neither the property nor the agent of its production is in possession. Sometimes a potential existence will be sufficient, and many instances and illustrations of this are given in *Van Hozer* v. *Cory* (34 Barb., 12), but the principle underlying them all is that the right to the property when it shall come into actual existence is a present vested right, such as the "wine that a vineyard is expected to produce, or the grain that a field is expected to grow, or the milk that a cow may yield during the coming year, or the future young cow of a female animal owned by the vendor." This rule has no application here because at the date of the mortgages the property involved may not have been made up, and the mortgagor had no possession or interest in the agent of its production.

It is familiar and elementary that no sale can be made of personal property thereafter to be purchased, even though it may afterwards come to possession. (Shep. Touch., tit. Grant, 241 ; Com. Dig., tit. Grant D.)

No principle known to our law will allow a chattel mortgage operation on property not in existence, either actual or potential.

and on authority the case stands no differently. *Gardner* v. *McEwen* (19 N. Y., 123.) was founded on a chattel mortgage on property in possession and which might thereafter be purchased, and the decision was that the mortgage was valid as to the property in hand, and inoperative so far as it professed to convey property afterwards purchased. To the same effect is *Edgell* v. *Hart* (9 N. Y., 213); *Conderman* v. *Smith* (41 Barb., 404); *Van Hoozer* v. *Cory* (34 id., 10); *Milliman* v. *Neher* (20 id., 37); *Otis* v. *Sill* (8 id., 102). The legal rights of these parties may, therefore, be set down thus. On the purchase of this post-mortgage property from the merchants the title became vested in the corporation, and there remained without subjection to the mortgages until its seizure by the sheriff.

While this position is substantially yielded by the plaintiff, a contention is set up that there is an equitable lien in favor of the mortgage paramount and superior to the lien acquired by the execution and levy, which a court of equity will protect and enforce.

This assumption finds no encouragement in any part of our system of jurisprudence. The equitable system lays on the same foundation as the legal system. Equity is the synonym for justice and the spirit of law, and never arrests its course or abates its rigor. Courts of equity administer justice in conformity with settled principles of law, and in no other manner; and they are controlled by the law of the land like courts of law. The only substantial difference between the two with us consists in the modes of relief. The judgments of the former may be given a wider scope and operation than judgments of the latter. They may enforce equitable liens, contingent interest, specific performance of contracts, and regulate liens so as to protect all equitable interests. But none of these subjects are involved here.

The question does not here come up between parties to a mortgage, where courts of equity may enforce a lien on post-obtained property in furtherance of justice to secure a *bona fide* claim. Such was the case of *Seymour* v. *Canandaigua, etc., R. R. Co.* (25 Barb., 284, and 14 How., 531). Where the railroad company executed a mortgage on its railroad, constructed and to be constructed, it was held that this was an agreement for a lien which equity would enforce against the claims of subsequent creditors.

This was a mortgage on land. The judge, in the opinion, says: "Considering, therefore, the rule in equity to be, that a grant of particular lands to be acquired *in futuro* is valid, and takes effect as a specific lien upon the lands as soon as they are acquired, it remains to apply the principle to the facts of this case." Without assenting to this for a general proposition, it was well enough in that case, for there was in that mortgage a particular specification of the property, while here there is none; and the question came up on a mortgage on land betweent he parties to the instrument. The judge also said that it was "a fundamental maxim of the common law that a man cannot grant or convey what he does not own." He said further, that the case of *Otis* v. *Sill* (*supra*), where it was held that a chattel mortgage could not operate on property not in existence at the time of its execution, was clearly right. The case, therefore, is not in our way. *Stevens* v. *Watson* (4 Abb. Ct. App. Cas., 302) is a similar case.

*McCaffrey* v. *Wooden* (65 N. Y., 460), much relied on by the plaintiff, was an action to recover for farm produce taken in this way. The defendant took the property for the lessor by virtue of a provision in a lease to the plaintiff for the farm which produced the crops, in this language: "It is agreed that the said party of the first part shall have a lien, as security for the payment of the rent aforesaid, on all goods, implements, stock, fixtures, tools and other personal property which may be put on said premises, and such lien to be enforced on the nonpayment of the rent aforesaid by the taking and sale of such property in the same manner as in cases of chattel mortgages on default thereof." The plaintiff was refused a recovery, on the ground that the agreement operated as a license and power to seize the property, and coupled as it was with a right to sell and appropriate the proceeds, it constituted a grant.

This is entirely harmonious with all we have said. If some part of this property had no actual existence at the execution of the instrument, it had a potential existence, and the plaintiff was in the possession of the agent for its production, and had the right to the property when it came into actual existence. We have made allusion above to similar cases. Much learning is displayed in the leading opinion in the last case, but much of it was unnecessary and received indorsement from one member of the court only.

The decision was unquestionably right, but it has small application here.

If this corporation had expended money in the purchase of property after the execution of the mortgages, then the claim might be set up with plausibility that it would be unjust to allow the appropriation of such property to the discharge of other claims, because in that case the purchase-price would be paid from the proceeds of the bonds secured by these mortgages. But the case is not so. On the contrary, the property in question was furnished by the merchants without payment of the purchase-price, and it would be little better than confiscation to permit the plaintiff to seize and hold it under the mortgages.

The naked technical title passed to the corporation without payment, and if the voice of equity is heard, it will direct that the property, or its proceeds, shall return in payment of its purchase. Certainly a court of equity will not interpose its assistance to hand over to the mortgagee this property, which, in all good conscience and justice, should go back to the merchants.

The order should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

BARNARD, P. J., concurred; GILBERT, J., not sitting.

Order granting injunction reversed, with costs and disbursements, and motion denied, with ten dollars costs.