RICHARD B. SMITH, RESPONDENT, *v.* GEORGE W. COOPER, APPELLANT.

*Chattel mortgage — when invalidated by an oral agreement authorizing the mortgagor to sell and dispose of the property.*

A chattel mortgage was given which covered all the farming utensils on a dairy farm, the stock, the growing crops, the cord-wood cut and the grain harvested, together with the furniture in the house. At the time of giving the mortgage it was orally agreed that the mortgagor, who was to remain in possession of the property until default, should be permitted to sell and dispose of the property either for money or in trade for other stock, the money received to be applied to the purchase of further stock, which was to be subjected to the lien of the mortgage, and that the grain should be used in feeding the stock. *Held,* that the agreement was fraudulent *per se* and rendered the mortgage void.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Downing & Strubrough,* for the appellant.

*J. Lawrence Smith,* for the respondent.

CULLEN, J. :

This action is in trover for goods seized by the defendant on an execution against Caleb T. Smith. The plaintiff claims title under a chattel mortgage executed by Smith on October 17, 1877, and refiled on March 11, 1879. The mortgage was refiled with a certificate of Smith that the mortgage was renewed for one year. On a previous appeal to this court it was held that the execution by Smith of the certificate was equivalent to the execution of a new mortgage, and that hence the mortgage was in life at the time of the seizure by the defendant. This decision concludes us on this question on the present appeal.

But there remains to be considered the further point urged by the defendant that the mortgage was fraudulent in law and void. The mortgage embraced all the farm utensils on a dairy farm, the stock, the furniture in the house, the growing crops, cord-wood cut and grain harvested.

The mortgage provided that the mortgaged property should remain in possession of the mortgagor until default was made in the payment of the debt, to secure which, the mortgage was given. It was proved on the trial by the testimony of both parties to the mortgage, that the property remained in the possession of the mortgagor until seizure by the sheriff.

It was further proved by the same testimony, that the plaintiff permitted Smith to sell and dispose of the property, either for money, or in trade for other stock, the money to be applied to the purchase of further stock, and the grain to be used in feeding the stock on hand, and the new or substituted stock to be subject to the lien of the mortgage. To such an extent was this carried that, according to the plaintiff's testimony, the substituted or renewed stock amounted to from one-fourth to one-third of the whole property. The grain and crops had all been consumed before seizure by the sheriff. The agreement between the parties as to the disposition of the property was as testified to by the plaintiff himself, that Smith " could make changes in this stock and replace it by new stock when necessary, and he did so." In other words, by the conceded statements of the parties, the agreement was that Smith should dispose of and deal with the property as he saw fit, transmuting the mortgaged articles, either directly into stock or indirectly into money, and then purchasing new stock with the money, and that such new stock should be substituted, as to plaintiff's lien, in the place of stock disposed of.

This agreement was by parol, but if invalid, it would vitiate the mortgage in the same manner as if it were embodied in its provisions. (*Conkling* v. *Shelley*, 28 N. Y., 360.) The question is therefore presented to us whether the agreement mentioned was, in law, conclusive of fraud, and did it invalidate the plaintiff's lien? In my opinion, the agreement was fraudulent *per se.* I do not see how the case is to be distinguished in principle from those of *Edgell* v. *Hart* (9 N. Y., 213) and *Mittnacht* v. *Kelly* (3 Abb. Ct. of App., 301). It was there expressly held that the intention to create a fluctuating lien which would release that which should be sold, and take in what should be purchased, rendered a mortgage void. The present case presents that exact arrangement. Nor has the authority of the cases cited been in any way limited

by subsequent decisions. True, it has been held that where a mortgagor is suffered to sell the property, and pay over the proceeds to the mortgagee, such an arrangement would not *per se* stamp the mortgage as fraudulent; but the receipts from such a, sale would apply to the satisfaction of the mortgage lien, even though such proceeds were not actually paid over. But such is not the agreement in this case. The proceeds of the sale were not to go in satisfaction of the debt, but were to be applied to purchase of new stock, which stock was not to become the property of the mortgagee, but simply to become subject to his mortgage lien. In other words, by all the sales and transmutations permitted the mortgagor, not one dollar of the mortgage debt has been discharged, and this, though one-third of the stock is disposed of, and all the grain and wood has been consumed or sold. On the contrary, the plaintiff claims that all of his mortgage debt is still due and owing to him. It was conceded that the plaintiff allowed the consumption of the grain in feeding the stock. I think that consumption was for the mortgagor's benefit. He was entitled to possession of the stock until default was made in the mortgage, and was bound to maintain the stock at his own expense. As to the substituted stock, it is expressly decided that the lien or mortgage did not attach to it. (*Gardner* v. *McEwen*, 19 N. Y., 123.) No question, however, was made on the trial as to any distinction between the original and new stock, and, therefore, the point cannot be raised here. But the agreement above referred to vitiated the mortgage *in toto*, as to all the property included in it. (*Edgell* v. *Hart, supra*.)

In my opinion, therefore, the learned judge on the trial erred in not directing a verdict for the defendant, and also in his refusal to charge the jury that if they found an agreement for substitution of the character before indicated, they should find a verdict for the defendant. But I am disposed to go farther in this case and hold that, even if it had been proper to submit the question of fraud to the jury, the verdict should be set aside as against the weight of evidence. It must be assumed, as the jury have found, that the plaintiff's debt was *bona fide*. But this alone would not save his lien. He obtained liens by this mortgage and others on everything the defendant had, articles to be consumed as well as stock of a permanent character. He suffered Smith to carry on

business with the mortgaged property in the same manner as if he had owned them free from plaintiff's lien. It is asserted that an account was kept of every article sold and the proceeds directly turned into the new stock. This may well be doubted. The only time plaintiff saw a lot of vinegar which was covered by the mortgage, was when it was on the table being used by Smith's family; and wheat, covered by another mortgage, he testifies was in part used by Smith's family for their ordinary consumption.

Reading all the testimony in this case, without referring to its details, the intent of the parties is too palpable to be mistaken. Smith was in money difficulties; he may have owed the plaintiff this money. This mortgage was made to secure it; and the understanding was that as long as Smith's other creditors refrained from proceeding against him he should carry on business as before; but when any of such creditors did intervene, then all of the property should be made over to plaintiff under this mortgage.

This arrangement, however dictated by feelings of family affection, is a fraud on the rights of other creditors.

The judgment should be reversed and a new trial ordered, costs to abide the event.

Present—DYKMAN and CULLEN, JJ.; BARNARD, P. J., not sitting.

Judgment and order denying new trial reversed and new trial granted, costs to abide event.