EDWIN LISTER

*v.*

GEORGE F. SIMPSON et al.

1. A mortgage of a stock of merchandise which contains an authority to the mortgagor, authorizing him to sell in the usual course of his business, is not, *per se,* fraudulent.

2. The question whether such a mortgage is fraudulent or not is a question of fact, to be determined by proof in the same manner as other questions of fact are determined.

On final hearing on bill and answer.

*Mr. David A. Ryerson,* for complainant.

*Mr. Joseph Coult,* for defendant.

VAN FLEET, V. C.

This case presents a question on which judicial opinion is divided. An eminent judge has said the decisions respecting it cannot be reconciled by any process of reasoning or any principle of law. The question is this: Is the mortgage of a stock of merchandise which, by its terms, permits the mortgagor to sell the property mortgaged in the usual course of business, and also provides that its lien shall extend to such goods as may be subsequently purchased to replace those sold, fraudulent, *ipso facto,* as to creditors?

The suit has two objects. First, to foreclose a chattel mortgage made by the defendant Simpson to the complainant; and, second, to restrain an action at law brought by the sheriff of Essex county against the complainant. The case has been brought to hearing on the bill and answer. The material facts may be summarized as follows: The defendant Simpson, on the 1st of December, 1881, made a mortgage to the complainant on all his stock of drugs and medicines, and all his stock of every kind and description in the store and on the premises No. 925 Broad street, Newark, and also on all stock of every kind and description which should be brought therein to replace stock sold in the regular course of business, to secure the payment of a note of $2,000, made on the same day by Simpson to the complainant, payable one year after date, with interest. The mortgage was verified and recorded pursuant to the requirements of the statute. The mortgagor retained possession of the mortgaged chattels, and from the date of the mortgage up until the 17th of October, 1883, carried on the business of a retail druggist, and from day to day, during that period, made sales, in the regular course of business, of the mortgaged chattels. On the day last named, the mortgagee took possession of the whole of the mortgagor's stock, including what remained of the original stock as well as that which he had subsequently acquired. In the interval between the date of the mortgage and the time when the mortgagee took possession, the stock had been almost entirely changed, so that a large part of the stock which the mortgagee took into his possession consisted of goods purchased subsequent to the date of his mortgage. On the 20th of October, 1883, three days after the mortgagee took possession, Charles B. Smith recovered a judgment, by confession, against Simpson, and caused to be seized, by execution, such of the goods then in the mortgagee's possession as had been purchased subsequent to the date of the mortgage. Nearly all the goods purchased by the mortgagor to replace goods sold were purchased of Smith on credit, and his judgment is founded on the debt thus contracted. The answer avers that the complainant knew that the mortgagor was purchasing goods of Smith, on credit, to replace goods sold.

and that he also knew, at all times, the state of the mortgagor's indebtedness to Smith, but, before the pleadings were read, it was agreed by counsel that the answer should be read as though this averment had been expunged and was not in the answer. The mortgagee, pursuant to a power contained in his mortgage, sold, on the 23d day of October, 1883, the whole of the stock which he had taken into his possession, to satisfy his mortgage debt. On the 30th of October, 1883, the sheriff, in virtue of the special property he had acquired by the levy under the execution issued on Smith's judgment, brought an action of trover against the complainant to recover the value of the goods covered by his levy. The complainant then exhibited the bill in this case.

There can be no doubt that at law it is necessary, in order to enable a person to make a valid mortgage of chattels, that he should have, at the time of the execution of the mortgage, a present property, either actual of potential, in the things mortgaged. *Looker* v. *Peckwell, 9 Vr. 253 ; S. C. on error, 10 Vr. 134.* A different rule, however, prevails in equity. A mortgage, valid in equity, both as between the parties and as against the creditors of the mortgagor, may be made upon personal property to be acquired by the mortgagor after the execution of the mortgage. In such case, though the property is not within the grasp of the mortgage at the date of its execution, yet it comes within its grasp the moment the mortgagor acquires title to it. *Smithhurst* v. *Edwards, 1 McCart. 408 ; Williamson* v. *N. J. Southern R. R. Co., 2 Stew. Eq. 311, 320.* I regard it as entirely clear that the complainant would be entitled to protection in equity, if the only ground upon which his title to the property in question was assailed was, that the lien of his mortgage did not embrace the property acquired subsequent to the date of his mortgage.

The test question is, Does the simple presence of an authority to the mortgagor to sell the mortgaged chattels, in the ordinary course of business, in a mortgage of a stock of merchandise, furnish such conclusive evidence that the mortgage was executed to defraud creditors, that the court should, simply upon finding

such authority and without requiring any other evidence of fraud, declare the mortgage to be fraudulent? There are several cases, decided by courts highly distinguished for learning and wisdom, which declare that this question should be answered in the affirmative. I do not pretend to have read all the cases which so decide, nor shall I cite all those which I have read, but only those which, from the character of the court or the force of their reasoning, are entitled to be regarded everywhere as weighty authorities. I refer to *Robinson* v. *Elliott, 22 Wall. 513; Edgell* v. *Hart, 9 N. Y. 213; Collins* v. *Myers, 16 Ohio 547*, and *Phelps* v. *Murray, 2 Tenn. Ch. 746*, as of this class. Stated briefly, the reasoning of these cases is this: That a mortgage which, by its terms, allows the mortgagor to sell the property mortgaged, serves to give the mortgagor a false credit, and affords the mortgagee no security whatever, for it makes it possible for the mortgagor, at any time, to sell the property as his own and appropriate the proceeds to his own purposes, and consequently it is possible for the debtor, in every instance, so to use such an instrument as to deprive the mortgagee of all security, and yet to make the mortgage serve as an effectual shield to protect his property from his creditors. This reasoning, it will be perceived, proceeds upon the theory that because such a mortgage may be used by a dishonest debtor with great facility as a means to defraud his creditors, therefore all such contracts should, for reasons of public policy, be subject to a conclusive presumption that they are fraudulent, whether they are so in fact or not. This reverses that cardinal rule which declares that fraud shall not be presumed but must be proved, and places the court in a position where it may be compelled, in obedience to a purely artificial rule, to declare a mortgage to be fraudulent which is not so in truth, but which is perfectly honest. This case furnishes a forcible illustration how unjustly the rule may operate in its practical application. If the judgment creditor in this case sold his goods to Simpson with actual notice of the mortgage, knowing that it expressly provided that all goods which the mortgagor should buy and bring into his store subsequent to its date, should at once become subject to its

lien, it would be scarcely possible for him to claim that he had been deceived or defrauded. In that case he could not say that he had been allured by false colors or deceived by false credit, but, on the contrary, it would appear that he had acted with full knowledge of the situation and had voluntarily accepted the risks incident to it. Now, what are the facts? It is not pretended that the judgment creditor did not know of the complainant's mortgage. On the contrary, his answer substantially admits that he did. His answer says that he always supposed that the new stock which he was from time to time selling to Simpson was not, and could not be, covered by the complainant's mortgage, and that if he had supposed that it would be, he would not have sold Simpson any goods on credit. Unless he knew of the mortgage, it was impossible for him to indulge in any reasoning or supposition as to whether the goods he sold would be subject to its lien or not.

Although this question, in its present form, has never been presented to this court, still I think the doctrine of the cases just referred to stands in such sharp conflict with the course of judicial opinion of this state upon this subject, and is so strongly opposed to what I regard as the manifest policy of our statute concerning chattel mortgages, that I think, even if I was convinced that it was sound and wholesome, I would not be at liberty to adopt it. The mere fact that a mortgagor retains possession and uses the mortgaged chattels, was never accepted in this state as conclusive and unanswerable evidence of fraud. Prior to the enactment of the statute making provision that if the mortgagor should retain possession of the mortgaged property, the mortgage must be made a matter of public record to give it validity against creditors and purchasers, it was held that while the retention by the mortgagor of the possession of the goods would furnish *prima facie* evidence of fraud, still it was evidence that was open to explanation, and if it could be shown that the mortgage was made in good faith, and for a valuable consideration, and that possession was retained by the mortgagor under an agreement not inconsistent with honesty and fair dealing, the mortgage should be upheld. *Runyon* v.

*Groshon, 1 Beas. 86; Miller* ads. *Pancoast, 5 Dutch. 250.*.
In *Miller* ads. *Pancoast,* it was expressly decided that when an
attempt was made to avoid a chattel mortgage on the ground of
fraud, the question was always a question of intent, to be set-
tled as a question of fact. This decision was made when no
provision existed for making such mortgages matter of public
record, and when they were always secret as to creditors. This
case also deals with the question now under consideration.
Chief-Justice Whelpley said: "Although the mortgage may
not be invalid against creditors or subsequent purchasers, for
want of possession in the mortgagee, it by no means follows that
it may not be void against subsequent purchasers by reason of
the mortgagee suffering the mortgagor to use and manage the
mortgaged chattels in such a way as to deceive *bona fide* pur-
chasers as to the right of the mortgagor to sell and dispose of
the chattels: as in case of the stock of a merchant or manufac-
turer, if the mortgagee of such a stock should permit the mort-
gagor to remain in possession, selling and disposing of his stock,.
without restriction, in the ordinary course of trade, such conduct
would be evidence of fraud to go to a jury, evidence that the
mortgage was kept on foot for fraudulent purposes, and the mort-
gage would be held void, at least so far as the property sold in .
the ordinary course of trade was concerned." This statement of
the legal effect of the mortgagor's making sale of the mortgaged
property, renders it certain that the court was of opinion that
the simple presence of such a power in the mortgage, or the
exercise of such a power by the mortgagor, should not, of itself,
be held to be sufficient evidence of fraud to avoid the mortgage.
On the contrary, the case is a direct authority that such a mort-
gage, if free from actual fraud, is valid against creditors. The
contest in that case was between the holder of a chattel mort-
gage and a sheriff, who, subsequent to the execution of the mort-
gage, seized and sold the mortgaged chattels under executions at
law. The holder of the chattel mortgage brought trover against
the sheriff, and, on the question whether the mortgage was fraud-
ulent in fact or not, had a verdict. The legal question, whether
the mortgage was void or not, under the statute of frauds, was

then certified to the supreme court, and answered in the negative. This decision must be regarded, as I think, as a conclusive authority on the question now before the court.

The same liberal doctrine has been applied in this state to the retention of possession by a judgment debtor of chattels seized under execution. Contrary to the rule of the common law, a plaintiff in execution may, after levy, if his judgment is honest and his purposes pure, leave the chattels levied on in the possession and enjoyment of the defendant without annulling his levy or jeopardizing his rights. And in such case the debtor may lawfully make such use of the property as may be necessary and usual in the proper prosecution of his business. If he is a merchant, he may sell the stock levied on in the ordinary and usual course of his business. "The object," says Chief-Justice Green, " of extending indulgence to the debtor (that is, allowing him to use the property as his own), is to allow him an opportunity, by his own exertions and the prosecution of his business, to pay the debt. But if the property of a man in business, whether as a merchant, a manufacturer or a farmer, be levied upon, he must, of necessity, if permitted to pursue his business to any advantage, deal with the property as his own. Goods must be exchanged, the raw material must be converted into manufactured articles and sold or bartered, the crops of the farm must be gathered and disposed of, the stock must be fed and the laborers must be paid; every revolving season, if not every successive week, must witness changes in the property levied on destructive of the validity of the lien. If the debtor be permitted to hold and enjoy the property, why should he not be permitted to use it in the only way it can be effectually used to enable him to pay his debt? If the one is consistent with fair dealing, why is the other, *per se*, fraudulent? Nor is it perceived how, permitting the defendant in execution to continue in the actual prosecution of his business after levy, either hinders, delays or defrauds creditors. It neither delays nor defrauds a creditor who has no execution. * * * A subsequent execution creditor can neither be hindered nor delayed in the collection of his debt by a prior execution, for he has it in his power

at all times to enforce a sale at his pleasure." *Caldwell* v. *Fifield,. 4 Zab. 150.*

This opinion declared the rule of law in force in this state at the time of the enactment of our statute concerning chattel mortgages. That statute makes it lawful for a mortgagor to retain possession of the things mortgaged, provided his mortgage is made a matter of public record in the manner prescribed by the statute. Now, I think the court, in interpreting this statute, is bound to declare that the legislature, in making provision that the mortgagor might lawfully retain possession of the things mortgaged, meant that his possession should be as beneficial and as advantageous and as perfect in all respects as that which the courts, in prescribing a simple judicial regulation, had given to a judgment debtor whose property was under levy. Such, I think, we must understand to have been the meaning of the legislature, if we believe they intended, by the enactment of this statute, either to secure uniformity in legal rules, or to promote the interests of traffic. To say that the owner of a stock of merchandise cannot lawfully mortgage it, subject to a right to sell from it in the ordinary course of trade, will be, in effect, to declare that one class of citizens shall be deprived of the benefit of a public statute, without the least indication, either on the face of the statute or in its policy, that it was intended they should be excluded. The dangers which it is feared will flow from a judicial sanction of a mortgage which permits the mortgagor to sell the things mortgaged, are, in my opinion, more fanciful than real. Every mortgage, by the very terms of the statute, is absolutely void against creditors, whether they know of it or not, which is not made a matter of public record, or accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged. If the mortgagor retains possession, the mortgage is void as to creditors, unless it is placed where it is open to the inspection of the world. If creditors have full notice of the mortgage, or can have it by the exercise of ordinary vigilance, how can they be injured? They cannot be misled or deceived unless they refuse to avail themselves of the information which the law has laid before them for their protection.

In support of the proposition that a mortgage containing a clause authorizing the mortgagor to sell the things mortgaged, in the regular course of his business, is not, *per se*, fraudulent, I refer to *Mitchell* v. *Winslow*, 2 *Story* 630; *Brett* v. *Carter*, 2 *Low.* 458; *Miller* v. *Jones*, 15 *Nat. Bank Reg.* 150; *Jones on Chat. Mort.* § 416 *et seq.*

No claim is made that there was any fraud in fact in the execution of the mortgage under consideration, or that the complainant subsequently knowingly allowed it to be used for a fraudulent purpose. The defence is that the mortgage is a fraud in law. On that question my judgment is against the defendant, and the complainant is therefore entitled to a decree.