CHRISTIAN COOK, APPELLANT, *v.* MINOR G. BENNETT AND JOHN HAMM, JR., RESPONDENTS.

*Chattel mortgage — an agreement that the mortgagee may deal with the mortgaged property as his own, provided he makes a certain annual payment, is fraudulent as to his creditors.*

Upon a sale of chattels the vendee executed to the vendor a mortgage by which he agreed to pay a certain part of the principal during each year of the term; at the same time the parties agreed that the vendee should execute a new mortgage each year for the balance unpaid; that he should have the right to sell the mortgaged chattels for cash or upon credit, and use in his business the proceeds not required for the said annual payment, replacing what chattels were sold with new goods in order to preserve the value of the security, and that such

new purchases should be subjected to the lien of said mortgage, and that of any subsequent mortgages executed by the vendee to the said vendor.

*Held,* that such an agreement tended to hinder, delay and defraud the creditors of the vendee, and was void as to them.

APPEAL by the plaintiff Christian Cook from a judgment, entered in the office of the clerk of Onondaga county on the 26th day of September, 1889, in favor of defendants, after a trial by the court at the Onondaga Circuit.

The plaintiff, in this action of replevin, sought to recover the possession of a quantity of furniture; two bay horses, a set of double harness, one double sleigh and one double wagon, which were mortgaged by one Mathias Theisin, by a mortgage dated May 1, 1884. On May 1, 1882, and several years prior thereto, the plaintiff was engaged in the furniture business at No. 71 South Salina street, Syracuse. May 1, 1882, he negotiated a sale thereof for $8,000 to Theisin, receiving in part payment $3,000 in cash and an agreement that the balance was to be secured by a chattel mortgage upon the property sold. Pursuant to the arrangement then made the plaintiff took a chattel mortgage for $5,000 covering the property sold, providing, in express terms, that $500 should be paid each year; and in the negotiation it was agreed that a new mortgage should be executed at the end of each year, and at least $500 paid. A new mortgage was executed in May, 1883, to secure the payment of $4,500; and in May, 1884, another mortgage was executed covering the goods then on hand to secure the payment of $4,000. This latter mortgage contained the usual "danger clause." A fire took place and a portion of the goods were burned, and the plaintiff received a portion of the insurance money, to wit, $800, which he applied toward the payment of his mortgage. On April 27, 1885, various creditors of Theisin procured judgments against him, and executions were issued thereon to the sheriff and levies were made upon the stock of goods in Theisin's store, including all the mortgaged property in controversy in this action. After the levy was made, and on April 28, 1885, this action was commenced, and in virtue of the proceedings in this action the coroner took possession of the property, and no undertaking having been given within the time prescribed by the statute, possession of the property was delivered to the plaintiff.

The Circuit Court, before which the action was tried, found "That at the time of said sale of May 1, 1882, and the giving of the mortgage, it was understood between the parties thereto that the said Theisin might go on and sell the stock in the ordinary way for cash or on credit and use the proceeds generally in his business, paying $500 of principal and the interest each year, and keeping by new purchases the stock in substantially as good condition as at the time of the sale, and at the end of each year give a new mortgage for the balance of the debt upon the property then in the store. That this understanding was carried out and continued in operation till the failure of Theisin in April, 1885 ; that during this time sales were made for cash and on credit, and the business conducted in the usual manner, all to the knowledge and consent of the plaintiff, and the stock kept up by new purchases, and the said mortgages of May 5, 1883, and May 2, 1884, were given in pursuance of said understanding, each covering the goods that were, at the time of the giving of such mortgage, in the store ; that after the giving of said mortgage of May 2, 1884, and up to the time of his failure, said Theisin sold goods from said store to the amount of six or seven thousand dollars, and no part thereof was applied on said mortgage."   *   *   *

And the court further found, "as matter of fact, as a conclusion, from the foregoing findings, that said mortgage of May 2, 1884, was given and received by the mortgagor and mortgagee with intent to hinder, delay and defraud creditors of said Theisin."

The court also found, as matter of law : (1.) "That the mortgage of May 2, 1884, was and is fraudulent and void as to creditors of the mortgagor and as to these defendants. (2.) That the defendants are entitled to recover of the plaintiff the possession of the property in controversy, or, in case possession is not delivered to the defendants, then the value found as aforesaid."

Before this action was commenced the plaintiff caused a demand for the possession of the goods to be made, and there was a refusal to deliver them up. One of the debts represented by the defense accrued on the 29th of November, 1878, one February 2, 1885, and one March 9, 1885.

*Louis Marshall,* for the appellant.

*Charles E. Ide,* for the respondents.

HARDIN, P. J.:

If we were to assume that the plaintiff's mortgage was valid, we might properly hold that this action could be maintained. (*Huggans* v. *Fryer*, 1 Lans., 276; *Merchants and Traders' Bank* v. *Farmers and Mechanics' Bank*, 60 N. Y., 47.) The proofs disclose sufficient occasion for the plaintiff to deem himself insecure and to warrant him in exercising the privilege conferred by the "danger clause" found in the chattel mortgage. Whether the chattel mortgage in question was fraudulent or not was passed upon as a question of fact by the trial judge; it was proper that such conclusion should be stated among the findings of fact (*Wallace* v. *Nodine*, 32 N. Y. St. Rep., 657, and cases there cited), and the burden of proof on that subject rested with the plaintiff. (*Wallace* v. *Nodine*, *supra*, at page 663.) We think the findings of fact made by the trial judge are supported by the evidence. Theisin testifies, viz.: "The mortgage was to be given on the stock of goods and payable $500 a year; I was to sell the goods and do whatever I had a mind to with the proceeds, I suppose, as long as he got his $500 a year and interest; he told me that I could make anywhere from three thousand to four thousand a year, and I could save so much; as far as the mortgage, all he asked was $500 a year, and I told him if I could pay more I would; there was nothing said between myself and Cook, either at the store or in Hopkin's presence, that the proceeds of the sale of these goods was to be given to Cook entirely, either in money or goods; I say there was no such thing said; there was no arrangement between myself and Cook by which the entire proceeds of the sale were to be turned over to him." There was some evidence given tending to show that the arrangement between the mortgagor and mortgagee was to the effect that the mortgagor should go on and sell the goods for cash or on credit and use the proceeds generally in his business, being required to pay at least $500 of the principal at the end of each year, and to execute a new mortgage for the balance remaining unpaid at the end of each successive year. This seems to have been carried out. Theisin made sales for cash and made sales on credit and conducted the business in the usual manner prevailing in such establishments, and this seems to have been done with the knowledge and consent of Cook, the mortgagee, who, having an office in the store, a portion of the

time assisted in the sales, making some sales, as the agent or clerk of Theisin, for cash and some on credit; the store was rented of Cook, the plaintiff, by the mortgagor for an annual rental of $1,000, and the rent and expenses of operating the store were paid from the proceeds of the business carried on; the sales were apparently six or seven thousand dollars a year. In speaking upon this subject the plaintiff, as a witness, testifies: "It is a fact that Matt (Theisin) was to go on and do business there; he was to pay his expenses, pay his rent, and make just as much profit as he could on the sale of his goods, and buy new goods and sell those that he had; if he sold the goods in one year he would pay me the whole of it; * * * I gave him ten years in which to pay it in the ordinary course of business, and give him a lease for five years; it was agreed that he should replace all old goods sold with new ones; when he sold the old goods he was to replace them with new ones, and I gave him authority to sell the old ones." A somewhat similar transaction was under investigation in *Griswold* v. *Sheldon* (4 Comst.,582), and it was there held: "The mortgage, besides permitting by its terms the mortgagor to retain possession of the goods, on its face conferred on him the power to sell and dispose of them as his own, and was, therefore, fraudulent and void in law as to creditors; and in an action brought by the mortgagee against a creditor who had levied on the goods the court should have nonsuited the plaintiff on the trial."

In *Edgell* v. *Hart* (5 Selden, 216) an arrangement very like the one now before us was under consideration and was condemned, and Judge DENIO, in delivering the opinion in that case, observed: "The true question, then, is whether a person engaged in traffic and indebted, can make a valid contract or conveyance in favor of one creditor, by which he shall possess a lien upon all the chattels which the debtor shall from time to time have on hand, allowing the latter to sell and purchase like an unqualified owner, the lien attaching only to what may be on hand at the time it is sought to be enforced. The proposition requires only to be stated to be refuted. The branch of it which professes to subject after-purchased property is void upon the most common principles. * * * But I am of opinion that the right to sell, if it stood alone, would vitiate the mortgage. In *Griswold* v. *Sheldon*

(4 Comst., 581–594) five judges of this court concurred in holding that such a provision would render the instrument void, and four were of opinion that where the mortgagor was allowed by the mortgagee to sell the mortgaged chattels, though not in pursuance of a provision in the instrument, the mortgage would be invalid in law, whatever a jury might think of it. The invalidity of such a transaction had been affirmed in the Supreme Court in *Wood* v. *Lowry* (17 Wend., 492), and no case or dictum has been found to uphold it. * * * My own opinion is that the existence of such a provision out of the mortgage or in it would invalidate it as matter of law, and that where the facts are undisputed this court should so declare. The manifest tendency of such arrangements to defraud creditors by giving to the mortgagor a false credit, and their incongruity with the just and legal idea of a mortgage are, in my mind, sufficient to condemn them." * * *

In *Ford* v. *Williams* (24 N. Y., 359) it was held : "An agreement, upon the mortgage of chattels, that the mortgagor shall keep possession and retail the goods for cash only, paying over the money to the mortgagee, is not fraudulent in law, but presents a question of good faith for the jury." In delivering the opinion in that case, DENIO, J. (at page 363), stated : "But if the debtor was permitted not only to retain the possession of the property mortgaged, but to sell it out by retail on his own account, as he had been doing before the mortgage, we think, with the judge who tried the case, that the arrangement would be fraudulent and the security void." In passing, it may be observed that the case before us contains no such limitation that the sales should be for cash only, and that all the proceeds of the sale should be turned over to the mortgagee, the mortgagor acting as agent in making such sales. The case in hand, therefore, differs from *Ford* v. *Williams* (*supra*).

In *Conkling* v. *Shelley* (28 N. Y., 362) it was held that an agreement between the mortgagor and mortgagee to the effect that the mortgagor should remain in possession and sell the goods from time to time "and pay over the proceeds to the latter, is not unlawful or fraudulent *per se.*" In delivering the opinion in that case EMOTT, J., said : "Where a mortgage contains a clause permitting the mortgagor not only to remain in possession, but to dispose of the mortgaged property at his discretion and apply the proceeds to his

·own benefit, it will be void as a fraud upon creditors. (*Edgell* v. *Hart*, 5 Seld., 213.) Where such agreement is made between the parties outside of the mortgage, but at the time of its execution, I should be inclined to agree with the idea expressed by Judge DENIO in *Edgell* v. *Hart*, and in *Gardner* v. *McEwen*, that it would invalidate the instrument in the same manner as if it were written in its provisions. At all events, it would be irresistible ·evidence of a fraudulent purpose."

A transaction somewhat like the one now before us was under consideration in *City Bank of Rochester* v. *Westbury* (16 Hun, 458), and in delivering the opinion in that case SMITH, J., said: "By the ·agreement in this case, as we gather it from the testimony, the mortgagor was not restricted to sales for cash, but he was at liberty to sell on credit at his unlimited discretion." The court reached the conclusion in that case that the mortgage was fraudulent as to creditors and void.

In *Smith* v. *Cooper* (27 Hun, 565) an arrangement somewhat similar to the one now before us was condemned. There it appeared, " at the time of giving the mortgage, it was orally agreed that the mortgagor, who was to remain in possession of the property until default, should be permitted to sell and dispose of the property either for money or in trade for other stock, the money received to be applied to the purchase of further stock, which was to be subjected to the lien of the mortgage, and that the grain ·should be used in feeding the stock," and it was held that the agreement was fraudulent *per se* and rendered the mortgage void.

In *Southard* v. *Benner* (72 N. Y., 424) it was held that " where, at the time of the execution of a chattel mortgage upon a stock of merchandise, it is understood and agreed between the parties that the mortgagor may go on and sell the stock and use the proceeds generally in his business, and the agreement is carried out by permitted sales, the transaction is fraudulent in law as against the creditors of the mortgagor." Also held: " Such an agreement outside of the mortgage and proved by parol is equally fatal to the instrument as if it had been made a part thereof; and it may be inferred from the fact that the mortgagee has permitted sales to be made as alleged." In the course of the opinion delivered in that case Judge ALLEN said: " The difference in the modes of proving the agreement

cannot take the sting out of the fact and render it harmless. If it is satisfactorily established, the result upon the security must be the same. It is the fact that such an agreement has been made and acted upon that, in law, condemns the security, and not the fact that it is proved by the instrument of suretyship, instead of by parol, or in some other way."

In *Potts* v. *Hart* (99 N. Y., 168) it was held, viz.: "A chattel mortgage is fraudulent and void as to creditors, where it was given with a tacit or express understanding and arrangement that the mortgagee may sell and dispose of the mortgaged property, and apply the avails to his own use." It was further held in that case: "Such an agreement may be inferred from the fact that the mortgagor does, with the knowledge and assent of the mortgagee, so sell and dispose of the property and apply the avails." We think the various doctrines of the cases to which we have already referred are against the plaintiff, and support the conclusion reached by the trial judge.

The learned counsel for the appellant upon the argument of this appeal, in his usually vigorous mode, contended that *Brackett* v. *Harvey* (91 N. Y., 214) was an authority which would sustain the mortgage in this case. We think otherwise. In that case it was held that "a chattel mortgage is not rendered void, as to creditors of the mortgagor, by a provision authorizing him to sell the mortgaged property and apply the proceeds of sales toward the payment of the mortgage debt."

"Nor does an authority to the mortgagor to sell on credit, taking good business paper, which the mortgagee agrees to accept and apply on the debt, affect the validity of the mortgage."

"So, also, permission to use a portion of the proceeds of sales to purchase other property does not vitiate the mortgage, where it is coupled with a condition that the property so purchased shall be brought in and subjected to the mortgage lien by a renewal of the mortgage." It was, however, held in that case that "an agreement, although outside of the mortgage, and oral simply, that the mortgagor may use a portion of the proceeds of sales for his own benefit, avoids the mortgage." The learned judge who delivered the opinion in that case conceded that if the finding that was made, to wit: "It was understood and expected by all of the parties thereto, that the avails of the sales made in said business were to be used in the trans-

action of said business, in paying the personal expenses of the said Frank E. Darrow and of the members of said firm, including their own and their families' support and maintenance," was sustained by the evidence that the same would necessarily be fatal; and he added, "for such an agreement opens the door to fraud and permits the mortgagor to use the property for his own benefit, utilizing the mortgage as a shield against other creditors." He then proceeds to examine the evidence and reaches the conclusion that the finding of fact was not supported by evidence in that case. We see nothing in the features of that case that warrant us in yielding our consent to the contention of the learned counsel for the appellant in the case in hand.

Nor does the case of *Robinson* v. *Elliott* (22 Wallace, 513) aid the contention of the appellant. In that case the mortgage contained a stipulation that the mortgagors might remain in possession of the goods, " sell the same as heretofore and supply their places with other goods, and the goods substituted by purchase for those sold shall, upon being put into said store, or any other store in said city where the same may be put for sale by said parties of the first part, be subjected to the lien of this mortgage." And it was held that the mortgage was void, and in the course of the opinion the court said, viz.: "But there are features engrafted on this mortgage which are not only to the prejudice of creditors, but which show that other considerations than the security of the mortgagees, or their accommodation even, entered into the contract. Both the possession and right of disposition remain with the mortgagors. They are to deal with the property as their own, sell it at retail and use the money thus obtained to replenish their stock. There is no covenant to account with the mortgagees, nor any recognition that the property is sold for their benefit. Instead of the mortgage being directed solely to the *bona fide* security of the debts then existing, and their payment at maturity, it is based on the idea that they may be indefinitely prolonged. * * * Manifestly, it was executed to enable the mortgagors to continue their business and appear to the world as the absolute owners of the goods, and enjoy all the advantages resulting therefrom. * * * Whatever may have been the motive which actuated the parties to this instrument, it is manifest that the necessary result of what they did do was to

allow the mortgagors, under cover of the mortgage, to sell the goods as their own and appropriate the proceeds to their own purposes; and this, too, for an indefinite length of time. A mortgage which, in its very terms, contemplates such results, besides being no security to the mortgagees, operates, in the most effectual manner, to ward off other creditors; and where the instrument on its face shows that the legal effect of it is to delay creditors, the law imputes to it a fraudulent purpose."

In *Yates* v. *Olmsted* (65 Barbour, 43) a chattel mortgage made under circumstances somewhat like those presented in the case now before us was condemned as fraudulent, and it was held in that case, viz.: "Although no express agreement in words, between the parties, that the mortgagor shall continue to sell the goods mortgaged, and the business proceed as before the giving of the mortgage, is found by the referee, such an agreement or understanding may be implied." The decision made at the General Term was reversed by the Court of Appeals in *Yates* v. *Olmsted* (56 N. Y., 632), upon an opinion to the effect that the clause in the mortgage did not, as a matter of law, render it fraudulent; and it appearing, also, that there was no authority reserved in the mortgagor to sell or deal with the stock while in his possession, and that no such arrangement was made and that the mortgagee had no actual knowledge of any such sales.

In *Russell* v. *Winne* (37 N. Y., 591) it appeared the mortgagor was a dealer in stone and kept a small store, and, although there was nothing in the mortgage authorizing a sale, the mortgagor continued after the mortgage to sell goods just as he had done before that time, applying the proceeds to his own use; and there was some evidence that it was done with the knowledge and assent of the mortgagee, and it was held that upon such evidence, if there was a finding by the jury that there was an agreement to allow such sale, then the mortgage would be void. (See, also, *Divver* v. *McLaughlin*, 2 Wend., 596; *Wood* v. *Lowry*, 17 id., 492.)

In *Ball* v. *Slafter* (26 Hun, 353) it was held that a chattel mortgage "containing a provision allowing the mortgagor to sell the property covered by it at retail for his own benefit is fraudulent as to his creditors," and that as the agreement in the case "did not

require the sales should be for cash, and, as matter of fact, they were on credit, and it did not necessarily require the proceeds to be paid on the notes when the sales were made," that the mortgage was void.

In *Sperry* v. *Baldwin* (46 Hun, 124) it was said that " a tacit understanding and agreement between the parties to the mortgage, entered into at the time of its execution, that the mortgagor might continue the business and sell the property and apply the proceeds to his own use " would render the transaction " void and illegal." The same doctrine seems to be held in *Greenebaum* v. *Wheeler* (90 Ill., 296) and in *Blakeslee* v. *Rossman* (43 Wis., 116).

In *Marston* v. *Vultee* (12 Abb., 144) it appeared that Marston was a gunsmith and kept a store; he mortgaged his stock in trade to the plaintiff, his mother; she left the property, after the mortgage to her, in his possession, with directions to go on and sell and trade the property as he had done before the mortgage. Woodruff, J., in delivering the opinion of the court condemning the transaction, said: " Where the arrangement is made between the mortgagee and the mortgagor that the latter may do so and apply the proceeds to his own use, whether that arrangement is shown by the face of the instrument or is proved otherwise to be a part of the terms or conditions on which the mortgage was given, such arrangement makes the arrangement necessarily fraudulent, because it operates, of necessity, to hinder, delay and defraud creditors — it secures to the debtor the use and benefit of his property and its proceeds, while it protects it from levy and sale for the payment of his debts."

In *Mittnacht* v. *Kelly* (3 Keyes, 407) a mortgage was condemned as fraudulent, as it was held that the intent " was not to create an absolute lien, but a fluctuating one, and the mortgage was, therefore, void;" and it was further said in that case that although the horse, wagon and harness in question did not constitute a part of the stock in trade, yet, "as to the stock in trade, the mortgage was fraudulent as against creditors; that fraud infected the whole mortgage and it is wholly void." (*Goodrich* v. *Downs*, 6 Hill, 438; *Mackie* v. *Cairns*, 5 Cowen, 547–580; *Grover* v. *Wakeman*, 11 Wend., 187–225; see, also, Thomas on Chattel Mortgages, § 263.)

In the case in hand evidently the mortgagor and the mortgagee

supposed at the time the instrument of 1882 was executed, and the subsequent instruments, that it was competent for them to have an arrangement by which the mortgagor should sell in the usual way of retail stores, pay the rent, clerk hire and living expenses out of the proceeds of the business, and carry forward the business in the manner in which it had been carried forward years before by the mortgagee, and that if at the end of each year the $500 was paid by the mortgagor to the mortgagee that the instrument would be and remain valid. We think such an arrangement tends to mislead, delay and hinder the creditors of the mortgagor, and that the views expressed in the opinion of the learned trial judge are correct.

We think the conclusions of fact and the conclusions of law stated by the learned trial judge should be sustained and the judgment should be affirmed, with costs.

MARTIN, J., concurred; MERWIN, J., not sitting.

Judgment affirmed, with costs.