[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 583 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 584 
The county court judgment is void for the reason assigned at the circuit, that it is for an amount exceeding the jurisdiction of the court as prescribed by the judiciary act of May, 1847. (Stat. of 1847, p. 328, § 30.) And I think it open to the further objection that the statute conferring original jurisdiction on the county court in common law actions is unconstitutional and void. (Const. art. 6, § 14; art. 14, § 58.) Although two of the learned judges in one branch of the supreme court, whose opinions are entitled to the highest respect, have arrived at a different conclusion, (Beecher v.Allen, 5 Barb. 169,) I must say that, after carefully considering the question, I have never been able to entertain a doubt that the statute is in conflict with the constitution, and can not stand. But as it is not now necessary to discuss the question — the judgment being also void on another ground — I shall do no *Page 586 
more than declare my opinion, without assigning the reasons on which it is founded. I need hardly say that the question will remain open for consideration, should it ever be brought before this court.
Although the county court judgment was void, the judge ruled that if the execution was issued and the levy made with out the knowledge or consent of the defendants, they were not liable: and there was not a particle of evidence that the defendant Sheldon knew any thing about either the judgment, the execution, or the levy; nor was there any proof that Payne, the sheriff, knew any thing about the matter, save what may be inferred from the fact that one of his deputies made the levy. It may be added that at the time of the first levy, the mortgage had not been forfeited, and the plaintiff had no right to the possession of the property. Burdick had paid all of the debt which had previously become due; and it was expressly provided by the mortgage that until default in payment he should retain the possession and enjoyment of the property. As there had been no default, and Burdick was in possession, the right of action for the illegal levy — whoever should be made defendant — was in him, and not in the plaintiff.
Six days after the levy under the void judgment a new levy was made under a valid judgment and execution against Burdick. This brings us to the consideration of the grounds on which the case was put at the circuit; and the general question is, whether the plaintiff can hold the goods by virtue of the mortgage against a judgment and execution creditor of the mortgagor.
The case was shortly this. The plaintiff and Burdick were respectively country merchants at Whitehall. On the 31st of May, 1847, Burdick hired the plaintiff's store for the term of three years, and purchased the plaintiff's stock of goods, then in the store, for the sum of about three thousand dollars. To secure the payment of the price he mortgaged those goods and all his own stock of goods to the plaintiff. The debt was to be paid by installments, the last of which was to fall due on the first of April, 1848; and until default in some of the payments *Page 587 
Burdick was to remain and continue in the quiet possession and full enjoyment of the property. Burdick removed his former stock of goods to the store he had rented, and mingled them with the goods purchased of the plaintiff; and then went on with his business as a merchant in the usual way, selling the goods to his customers down to the time of the levy in August, 1847. It appears on the face of the mortgage that Burdick hired the "store" in which the goods were placed, for the purpose of using it as a store: that he was to pay one thousand dollars of the plaintiff's debt "in goods and groceries c. from the store" "at the current prices," to be delivered at such times and in such quantities as the plaintiff might desire: and he agreed "to keep a good and full assortment of goods, groceries, c. during the time he remains in said store, and until" the plaintiff's debt should be fully paid. It is apparent from the face of the instrument, when read with reference to the nature of the case, and the existing state of things at the time it was given, that the parties intended Burdick should do just what he did do: that he should go on selling the goods as a merchant, and dealing with them in all respects as though he were the absolute owner. Thus he acted down to the time of the first levy, when there had been no default on his part; and he was by the terms of the mortgage entitled to the possession of the goods to the exclusion of the plaintiff. On this case the judge refused to nonsuit the plaintiff, holding that the mortgage was not void in law against the creditors of Burdick; and left it to the jury to say, whether the mortgage was made to hinder, delay or defraud the creditors of Burdick, and whether a sufficient reason or excuse had been given for permitting Burdick to have possession of the goods.
I am far from thinking this a proper disposition of the cause. The parties not only stipulated for continued possession in the mortgagor, a thing which the legislature has condemned as presumptively fraudulent against creditors; (2 R.S. 136, § 5;) but I have been unable to read the conveyance, with a knowledge of the surrounding circumstances, without coming to the conclusion that, the parties intended Burdick should deal with the *Page 588 
goods as his own. When a merchant hires a store, and buys a stock of goods to put in it; and when he moreover agrees to keep a good and full assortment of goods in the store, and to pay a debt in goods out of the store at the current prices, one must wink very hard not to see that he intended to deal with the goods as a merchant, and sell them to his customers; and of course the other party to the contract knew what was meant as well as he did. If this is a just view of the transaction — if it is apparent from the face of the deed that the plaintiff intended Burdick should not only have possession, but should be allowed to deal with the property as though he were the owner, no one will pretend that the mortgage can stand as against creditors and purchasers.
But if the intention to allow Burdick to dispose of the mortgaged property as owner can not be gathered from the face of the deed, still the goods were left in his possession, and he was in fact allowed to deal with them as owner, and disposed of them as a merchant to his customers, from the date of the conveyance down to the time of the levy. Such a transaction the law always has, and I trust always will, pronounce a fraud upon creditors and purchasers; and the judge should have so ruled at the circuit. In Worrall v. Smith, (1 Camp. 332,) the debtor had made an assignment of his household furniture and stock in trade as a publican; and although a servant of the assignee was immediately put into the house, yet as the debtor was still allowed to carry on the business as usual, Lord Ellenborough held the assignment fraudulent and void as against creditors; and a creditor recovered against the sheriff in an action for falsely returning nulla bona to an execution against the assignor. InPaget v. Perchard, (1 Esp. 205,) Mrs. Spencer, who kept a public house, made a bill of sale of her liquors and furniture to the plaintiffs on the fourth of April, and the plaintiffs put a person in possession under the bill of sale the same evening. The property was taken the next day under an execution, and the plaintiffs brought trespass. But, it appearing that the agent whom the plaintiffs had put in possession had permitted Mrs. Spencer to sell liquors, in the usual way of her *Page 589 
trade on the evening of the fourth of April, and to receive the money, Lord Kenyon held the bill of sale a fraud upon creditors, and nonsuited the plaintiffs. These are much stronger cases than the one at bar; for here the plaintiff, without taking even colorable possession — indeed, without having any right to possession — allowed the debtor to carry on his business as usual for more than two months, without either claiming or exercising any control over the property, or doing any thing to put creditors or purchasers on their guard. See also Jordan v.Turner, (3 Blackf. 309.) Our courts have held transactions of the same kind to be fraudulent in law against creditors. InDivver v. McLaughlin, (2 Wend. 596,) one Stephens mortgaged his stock of goods as a grocer to the plaintiff, and still went on with his business as usual until the property was seized on an execution in favor of the defendant, when the plaintiff brought trespass. The judge refused to nonsuit the plaintiff, and submitted the case to the jury, who found a verdict for the plaintiff. But the judgment was reversed on a writ of error, for the reason that the transaction was fraudulent in law, and should have been so ruled by the court. Chief Justice Savage, who had before gone a great length in upholding conveyances of chattels unaccompanied by possession, said there were many cases where mortgages of personal property had been considered valid, though the possession remained in the mortgagor; but he had seen no case like the present. It may, I think, be safely added, that no case can be found where such a transaction has been upheld as against creditors or purchasers. Wood v. Lowry, (17 Wend. 492,) is another case in point. Kellogg, a country merchant, mortgaged his goods to the plaintiffs to secure the payment of a debt, and was permitted to continue his business in the usual way until the goods were seized by an execution creditor. The plaintiffs then brought replevin; and the jury, under the direction of the judge, found a verdict for the defendant. A motion for a new trial was denied; the court saying, that no mortgage or bill of sale was ever upheld under such circumstances. It was added that, instead of leaving the matter as a question of fact to the jury, the judge would have been well warranted in *Page 590 
instructing them that the transaction was fraudulent and void in law. In Goodrich v. Downs, (6 Hill, 438,) where the debtor made a general assignment of his property in trust for the benefit of a part only of his creditors, and reserved the surplus to himself, the judge at the circuit held the assignment fraudulent and void on its face, and nonsuited the plaintiff, instead of leaving the question of fraud to the jury; and the supreme court confirmed the decision. That case was approved by this court in Barney v. Griffin, (2 Comst. 365,) where the same general doctrine was asserted.
If the plaintiff had attempted to recover the goods which Burdick had sold to his customers, no one would think for a moment that he could succeed: and the statute gives no greater or better right to a bona fide purchaser, than to an execution creditor. The transaction was clearly fraudulent in law as against both. There would be no hope of maintaining honesty and fair dealing, if the courts should allow a mortgagee or vendee to succeed in a claim to personal property against creditors and purchasers, after he had not only left the property in the possession of the debtor, but had allowed him to deal with, and dispose of it as his own.
But we are told that the court of errors has decided that in a case like this the question of fraud must be left to the jury, and that their finding is conclusive. The answer to this argument is, that the court of errors never made any such decision. That court went a great way during the "hard times" towards protecting debtors against the claims of creditors: (see 1 Hill, 457, 461:) but it never went so far as to legalize a transaction like this. It was held more than once that continued possession in the vendor or mortgagor was not such conclusive evidence of fraud as to preclude all explanation; and that where the vendee or mortgagee gave evidence tending to show the transaction fair and honest, the question of fraudulent intent must be left to the jury. But merely leaving the property in the possession or keeping of the debtor, is a very different thing from allowing him to traffic with the property and sell it as his own. It is but justice to the court of errors to say that it never gave the slightest *Page 591 
countenance to a transaction of this kind; nor did it ever hold that such a case must be left to the decision of a jury.
It is proper also to correct another erroneous statement in relation to the decisions of the court of errors. That court held that, although the property was left in the possession of the debtor, yet if the vendee or mortgagee gave evidence tending to repel the legal presumption of fraud, the question of fraudulent intent was one of fact, which must be left to the jury. But the court never held that the finding of the jury upon that question was conclusive. It never attempted to subvert the ancient and well established jurisdiction of the supreme court to grant new trials when the jury find a verdict, either without evidence to support it, or against evidence, or the weight of evidence. It is often a question of fact for the jury whether the defendant made the bond, note or promise on which the action is founded; whether the debt has been paid or released; whether the defendant took the plaintiff's goods as a trespasser, or has held the lands in question adversely, and the like. But still the court has an undoubted right, and is under a corresponding obligation, to set aside the verdict when it is erroneous, and grant a new trial. The late Mr. Justice Cowen thought the court of errors had gone far enough to make the finding of the jury conclusive in this class of cases. But that error was long since corrected by the supreme court, and its jurisdiction asserted, by setting aside a verdict in favor of a fraudulent sale, and granting a new trial. (Vance v. Phillips, 6 Hill, 433.) It is as clearly the right and duty of the supreme court to review the finding of a jury in cases of this kind, as it is to review their verdict on any other question of fact: and the court is not at liberty to disclaim that jurisdiction.
Although we, as an appellate court, can not review the finding of a jury on any question of fact, I have deemed it proper to notice the plaintiff's argument that the verdict was conclusive in the court of original jurisdiction, because the learned judge who delivered the opinion of the court in that case appears to suppose that the court of errors had so decided; whereas, from *Page 592 
the nature of the case, such a question could never have been presented to that court for decision.
Enough has been said to show that the mortgage was fraudulent in law as against the creditors of Burdick; and the plaintiff should either have been nonsuited, or the jury should have been directed to find a verdict for the defendants.
But if there had been nothing beyond the fact of unchanged possession, and this had fallen within the class of cases where the court of errors has held that the question of fraudulent intent must be left to the jury, I should still think the judge wrong in the mode of submitting the cause to the jury. He decided that the mortgage was "not void in law on its face, and that the jury must pass upon the questions whether the mortgage was made to hinder, delay or defraud the creditors of Burdick: and if they found it was not, then whether sufficient reason or excuse had been given for permitting Burdick to have possession of the goods." This mode of leaving the cause to the jury was not in accordance with the statute, and was well calculated to produce a wrong verdict. Instead of telling the jury that the mortgage was not void in law, he should have told them that, because the possession was not changed, the mortgage was presumed in law to be fraudulent and void as against creditors and bona fide purchasers. Such is the rule of the common law, and such are the words of the statute. (2 R.S. 136, § 5.) And instead of telling the jury that they must pass upon the question whether the mortgage was made to defraud the creditors of Burdick — thus, in effect, leaving the onus of proving the fraud upon the creditor — he should have told the jury that the law presumed the fraud, and cast the burden of disproving it upon the person claiming under the mortgage. Such is the plain declaration of the statute. The words are — Every sale or assignment by way of mortgage, c. of goods and chattels, unless accompanied by possession, "shall bepresumed fraudulent and void" as against creditors and purchasers; "and shall be conclusive evidence of fraud, unlessit shall be made to appear on the part of the persons claimingunder such sale or assignment, that the same was made in good faith, and without any intent to defraud such *Page 593 
creditors or purchasers." In this class of cases, as well as in all others, the jury must be properly instructed by the court. They should not be left to find that there is no fraud, because there is no direct evidence of that fact; but they should be told that fraud is presumed from the fact of unchanged possession; and that this evidence of fraud is conclusive — not such evidence as they may disregard — but in the words of the statute "conclusive evidence," unless the person claiming under the conveyance has proved that the same was made in good faith, and without any intent to defraud.
The statute does not introduce a new rule, nor does it make a forced or unnatural presumption. The direct tendency of a conveyance of goods without a change of possession is to deceive and to defraud creditors and purchasers; and the law always presumes, even in criminal matters, that a person intends whatever is the natural and probable consequence of his own actions. (1 Phil. Ev. 444, Am. ed. of 1849.) In Rex v.Sheppard, (Russ. Ryan's Cr. Cas. 169,) the prisoner was indicted for uttering a forged receipt with intent to defraud one Mordey; and although Mordey swore to his belief that the prisoner had no intent to defraud him, yet as the necessary effect and consequence of the forgery was to defraud Mordey, if the prisoner could not repay the money procured by the receipt — in other words, as the natural and probable consequence of the act was to defraud Mordey — the judge told the jury that there was sufficient evidence of the intent for them to convict the prisoner: and the conviction was afterwards approved by the twelve judges.
The judge also told the jury that they must pass upon the question whether sufficient reason or excuse had been given for permitting Burdick to have possession of the goods; when, in truth, no reason or excuse whatever had either been given or offered. This was no better than telling the jury that they might guess that there was a good reason for the unchanged possession.
Although some of the points which have been noticed are not so raised by the bill of exceptions that we can act upon them by *Page 594 
way of review, there was an exception to the refusal of the judge to nonsuit the plaintiff, and to his charge that the mortgage was not fraudulent in law: and on those grounds the judgment should be reversed.
RUGGLES, JEWETT and McCOUN, Js. concurred in the opinion that the mortgage was void on its face on the ground that it authorized the mortgagor to retain and dispose of the goods as the owner thereof, and they therefore were for reversal.