## GAUSS SONS ET AL. v. DOYLE & CO. ET AL.

1. MORTGAGE: *Evidence: Declarations of mortgagor.*

Neither the mistake of a mortgagor of goods, as to the legal effect of the mortgage, nor his conduct or declarations as to his right to sell them, are admissible against the mortgagees, further than they tend to show his understanding of the intention of the parties at the time of executing the mortgage.

2. FRAUDULENT CONVEYANCE: *Mortgage.*

Where there is an agreement or understanding between the mortgagor and mortgagee of a stock of goods that the mortgagor may remain

in possession of the goods and sell them as his own, the mortgage is as fraudulent and void as to other creditors as if the agreement were expressed in the mortgage; and to arrive at their true meaning, the concurrent acts, surrounding circumstances and subsequent conduct of the parties are taken together for the consideration of the court or jury trying the issue.

3. MORTGAGE: *Sales by mortgagor.*
  It is against public policy for a mortgagor to remain in possession and sell the mortgaged goods, except as agent of the mortgagee.

APPEAL from *Washington* Circuit Court.
Hon. J. M. PITTMAN, Circuit Judge.

*B. R. Davidson*, for appellants.

The mortgages in this case were not within the principle of *Lund v. Fletcher, 39 Ark., 325,* nor *Martin et al. v. Ogden, 41 Ark., 186.* It was expressly stipulated in the mortgage that nothing should be sold without the written consent of mortgagees.

The fact of leaving Bates in possession of the mortgaged property did not render the mortgage void. The rule in Twyne's case does not obtain where there are registration laws. *Lund v. Fletcher et al., 39 Ark., 325–332; Jones Chattel Mortgages, sec. 176; Herman Chattel Mortgages, sec. 72; Webber v. Armstrong et al., 70 Mo., 217.*

Had the mortgage been silent on the question of authority to sell, there would have been no implied authority from the nature of the property and his authority to retain possession. *Webber v. Armstrong et al., 70 Mo., 217.*

The sales made by Bates were wholly without authority and without knowledge of the parties. They did not invalidate the mortgage. *Yates et al. v. Olmstead, 56 N. Y., 632.*

The rule of *Lund v. Fletcher* is recognized in Massachusetts, yet the Supreme Court held the mortgage valid in a

case where the mortgagor was left in possession of a stock of groceries and provisions, and sold without consent, with a condition in the mortgage that he should not, "except with the consent in writing of the grantee or his representatives, attempt to sell or remove from said building the same or any part thereof," that he might retain possession, "use and enjoy" the property. *Sleeper v. Chapman, 121 Mass , 404–408.*

Bates was left in possession of the goods, but was prohibited from selling by the contract. He understood the language of the contract, but supposed the *legal effect* to allow him to sell for cash if he would account for the proceeds. The mortgagees did not even know he understood the legal effect in that way. Had the mortgage been written as Bates understood the legal effect to be, it would still have been valid. Our court has never gone so far as to hold that possession with power of sale necessarily renders a mortgage void, but have intimated the contrary doctrine where there is an obligation to account for the proceeds of sales. *Martin v. Ogden, 41 Ark., 186–190.* The states recognizing the rule as laid down by our court have almost universally held that when the party is authorized to sell for cash and required to account for the proceeds, the mortgage is not void. *Brackett v. Harvey, 91 N. Y., 214, 220, 221; Kleine, Heggar & Co. v. Katzenberger & Co., 20 Ohio St., 110; Hawkins v. Hastings Bank, 1 Dillon, 462; Loutham et al. v. Miller, 85 Ind., 161; McLaughlin et al. v. Ward, 77 Ind., 383; Miller v. Lockwood, 32 N. Y., 293; Conkling et al. v. Shelly, 28 N. Y., 360.*

See, also, *91 N. Y., 224–5; 18 Ark., 123; Bump. Fr. Conv., 353; 54 Wisc., 248; 72 Mo., 632; 20 Ohio St., 110–117; 58 N. H., 260; 22 Wall., 512–524; 23 Ark., 258; 31 ib., 554; 18 Ark., 123.*

The mortgage was not void upon its face, and the testimony fails to show one fact tending to prove that appellants made any contract or had any understanding outside the mortgage.

*Collins & Balch,* for Doyle & Co.

*First*—If, at the time the mortgage was executed, it was in the minds of all the parties to the mortgage that Bates should execute the mortgage on his stock of merchandise, and then continue his business, selling the same in the usual course of trade as before, or if there was a contract either expressly or impliedly to this effect, the mortgage is void. *5 Dillon, 116–117; 5 Ohio St., 1.*

Taking all the facts into consideration, it is clear there was an implied understanding that Bates was not to close his doors, but was to remain in possession and carry on his business as before.

*Second*—Bates' declarations are admissible against him to show the state of his mind, his intent and understanding of the transaction as a part of the *res gestæ*, but of course the mortgagees are not bound by such declarations, but they were admitted to show the mind and understanding of Bates. *Bump. Fr. Conv.*

*Third*—The chancellor having found the mortgages void, this court will not reverse his finding, if there was any evidence to warrant such finding.

COCKRILL, C. J. The issue in this case was whether certain mortgages of merchandise given by Walter Bates to the appellants were made to hinder, delay and defraud creditors. There were two mortgages, one to each of the two appealing firms; they were identical in form and contained no provision upon which the court would seize for

the purpose of declaring fraud solely as a conclusion of law. The chancellor, however, found from the evidence that they were fraudulent in fact, and gave preference to the claim of a subsequent attaching creditor in a suit by the mortgagees against the attaching creditors and the common debtor to foreclose the mortgages.

The evidence which was mostly oral, and is preserved by bill of exceptions, presents this state of facts: Bates was conducting a general merchandise business in a small town in Washington county, and became indebted for merchandise to several non-resident firms, the appellants among the number. The appellants were pressing him for payment through their traveling agents and an attorney. They all met at the county-seat, some miles from Bates' place of business, to effect a settlement. After a parley with the agent of Gauss Sons, it was agreed that Bates should have ninety days to pay their claim, and that he should secure it by a mortgage upon his stock of goods. The attorney who held the claims of both firms was directed to draw the mortgages. They covered Bates' entire stock in trade. Nothing was said in the conference, or elsewhere, about the continuance or discontinuance of his business. The mortgages were written upon a blank form, the printed part of which contained a clause to the effect that the mortgagor should not sell or remove any part of the mortgaged property without the written consent of the mortgagees. Bates testified that in executing the mortgages he overlooked this provision, or else did not understand the effect of it; that it was not his intention to discontinue his business or bind himself not to make sales of the mortgaged goods. He continued the business as though no mortgage had been executed, sold goods as customers offered, used some of the groceries out of the stock for his family support, and purchased other goods with a part of the proceeds of sales.

When matters had progressed in this way for about two months, Doyle & Co. caused an attachment to be levied on the stock of goods. Bates protested against the right of the officer to make a levy under the attachment on account of the mortgages, and upon being taxed with making sales of the mortgaged property, replied that he had the consent of the mortgagees to do so. He testified, however, that no express consent had been given, and in this he was corroborated by the appellants' agents who had conducted the mortgage settlements.

Neither Bates' inadvertence or mistake as to the meaning of the written contract he entered into, nor his subsequent conduct or admissions, in reference to the property, were in themselves evidence against the appellants, further than they tended to show the understanding of one of the contracting parties at the time of the execution of the mortgages. If it was the agreement or understanding of the parties at the time the mortgages were executed that the mortgagor should remain in possession of the stock of goods and sell them as his own, it would render the instruments as ineffectual against other creditors, as though the objectionable agreement were set out in the face of them. It is the intent to defraud that vitiates the security in such cases, and the effect is the same whether that is shown by the written terms of the agreement, or is brought to light by other evidence; and to arrive at the true meaning, the concurrent acts, surrounding circumstances and subsequent conduct of all the parties that reflect light upon the original intention, are taken together as proper matters for the consideration of the court or jury trying the issue. *Fink v. Ehrman*, *44 Ark.*, *310 ; Martin v. Ogden*, *41 ib., 186 ; Lund v. Fletcher*, *39 ib., 325 ; Sparks v. Mack et al.*, *31 ib , 666 ; Freeman v. Rawson*, *5 Ohio St , 1 ; Weber v. Armstrong*, *70*

*1. Evidence:*
*Declarations of mortgagor.*

*2. Sales by mortgagor.*

*Mo.*, *2??*; *Brackett v. Harvey, 91 N. Y., 214, 223; Southard v. Benner, 72 ib., 424; Sleeper v. Chapman, 121 Mass., 404.*

Bates thought he had the consent of the appellants from the outset for the course of dealing he pursued. There can be but one opinion about that. If the appellants were with-out fault, his misapprehension could not invalidate their security. But the circumstances tend strongly to sustain the conclusion of the chancellor, that Bates did not mis-construe the original meaning, however innocent the appellants' agents may have been of the intent of actual fraud upon other creditors. They knew that Bates was selling off his stock when they granted him an extension of time on his debts. There was nothing in the negotiation with him that indicated an intention to close his store in any way. There was no probability that he could liquidate the mortgage debts unless by a continuance of his business, and they must have known that at the time. It was fully con-templated and expressly agreed that he should be left in possession until default in payment or a violation of other terms of the mortgage. Nobody seems to have attached any importance to the printed clause prohibiting sales without written consent, and no consent was expressly given or refused. The attorney's duties were ended when the mortgages were drawn; and the drummers, whose duty it was to see to the interest of their houses in this territory, gave themselves no concern at any time about the property. As they had given no express consent to sell, they seem to have regarded it as immaterial whether Bates did sell or not. It appears that they had no actual knowledge of any sales, but it is not reasonable to suppose that they believed no sales would be made, and the appellants must be held responsible for the consequences, and we refuse to disturb the chancellor's finding.

An attempt was made to show that the mortgagor sold only for cash and set the proceeds of sale aside to be credited on the mortgage debts, but it is apparent that he was acting for himself and not as the agent of the mortgagees in doing this, and it is against public policy that he should be allowed to remain in possession and sell except as the accredited agent of the mortgagee. *Fink v. Ehrman, supra.* Affirm.

